**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| MARIA D. MORALES, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:19-CV-223-JEM |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of the | ) | |
| Social Security Administration, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Maria Morales

on May 20, 2019, and Plaintiff's Opening Brief [DE 14], filed February 7, 2020. Plaintiff

requests that the decision of the Administrative Law Judge be reversed and remanded for further

proceedings. On March 19, 2020, the Commissioner filed a response, and Plaintiff filed a reply

on April 2, 2020. For the foregoing reasons, the Court reverses the Commissioner's decision and

remands the case for further proceedings.

**I.     Background**

On June 3, 2016, Plaintiff filed an application for benefits alleging that she became

disabled on January 31, 2014. Plaintiff's application was denied initially and upon consideration.

On January 12, 2018, Administrative Law Judge ("ALJ") Arman Rouf held a hearing at which

Plaintiff, along with an attorney and a vocational expert ("VE"), testified. On May 8, 2018, the

ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.      The claimant met the insured status requirements of the Social Security
        Act through June 30, 2016.

2.      The claimant did not engage in substantial gainful activity during the

period from her alleged onset date of January 31, 2014 through her date last insured ("DLI") of June 30, 2016.

3.    The claimant has the following severe impairments: major depressive disorder, generalized anxiety disorder, and panic anxiety syndrome. She also has the non-severe impairments of reflux, vaginal wall prolapse, obstructive sleep apnea, headaches, history of goiter, hypothyroidism status post left thyroid lobectomy, papillary microcarcinoma of thyroid, obesity, fibromyalgia, and osteopenia.

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can perform simple, routine, and repetitive tasks. She can maintain attention and concentration for two-hour segments. She can make simple work-related decisions. She can tolerate occasional changes in a routine work setting.

6.    Through the date last insured, the claimant was unable to perform any past relevant work.

7.    The claimant was born on April 15, 1957 and was 59 years old, which is defined as an individual of advanced aged, on the date last insured.

8.    The claimant is not able to communicate in English and is considered in the same way as an individual who is illiterate in English.

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.    Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11.    The claimant was not been under a disability, as defined in the Social Security Act, at any time from January 31, 2014, the alleged onset date, through June 30, 2016, the date last insured.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. [DE 8]. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.    Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence, or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial

evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010) (*O'Connor-Spinner I*); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## III.   Analysis

Plaintiff argues that the ALJ erred in assessing Plaintiff's non-severe impairments, failed to properly account for Plaintiff's mental limitations in the RFC, and failed to consider all the medical opinions. The Commissioner argues that the decision is supported by substantial evidence.

The ALJ found that all of Plaintiff's physical limitations were non-severe, including her

headaches, and therefore did not include limitations relating to headaches in the RFC. The RFC is an assessment of what work-related activities the claimant can perform despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); see also 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all the relevant evidence, both medical and non-medical. See 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (citing *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003)).

Plaintiff testified to her headaches and migraines at the hearing and completed a headache questionnaire regarding her symptoms. On the questionnaire, Plaintiff wrote that the headaches caused nausea, vomiting and blurred vision and made her "hazy, drowsy and fatigue[d]." AR 333. Plaintiff underwent a head CT scan in May 2015, which showed an oval-shaped arachnoid cyst, mild generalized cerebral atrophy/microvascular change, and "several indeterminate subcentimeter low-attenuation lesions within various portions of the skull." AR 588. A June 8, 2016 MRI showed mild to moderate cerebral volume loss/atrophic changes, as well as moderate opacifications of the left mastoid air cells and a five-millimeter cerebellar tonsillar ectopia[1] with rounded tip. AR 680-681.

The ALJ found Plaintiff's headaches to be non-severe, but did not analyze them in the decision beyond stating that Plaintiff complained of headaches. Addressing the non-severe impairments generally, the ALJ stated that they had been "managed medically," with no

---

[1] Tonsillar ectopia are associated with occipital and exertional headaches. *See* Bridget C. Arnett, *Tonsillar ectopia and headaches*, 22 Neurologic Clinics 229-236 (February 2004), *available at* https://pubmed.ncbi.nlm.nih.gov/15062536/.

aggressive treatment recommended or anticipated. AR 19. The ALJ also made a general finding that the alleged intensity and persistence of her symptoms were not entirely consistent with the medical record, and cited to SSR 16-3p, but again failed to address headaches directly. SSR 16-3p specifically instructs that ALJs "evaluate whether [the claimant's] statements are consistent with objective medical evidence and the other evidence," and "explain" which symptoms were found to be consistent or inconsistent with the evidence. SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016), at *6, *8; *see also Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (remanding where ALJ failed to "explain[] the inconsistencies" between a claimant's activities of daily living, his complaints of pain, and the medical evidence) (citing *Clifford*, 227 F.3d at 870-72). That explanation is lacking here.

The ALJ also failed to provide a logical bridge to her conclusion that, beyond being not as severe as claimed, the headaches were a non-severe impairment requiring no RFC limitations at all. Neither the ALJ nor the state agency opinions he relied on addressed the May 2015 CT scan or the June 2016 MRI, in violation of the Seventh Circuit Court of Appeals's instruction that ALJs secure medical opinions to determine the significance of medical findings. *See Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) (ALJs must "rely on expert opinions instead of determining the significance of particular medical findings themselves"); *see also Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (warning that an ALJ may not "play[] doctor and reach[] his own independent medical conclusion"). Nor did the ALJ cite evidence that the headaches had been "managed medically." Instead, the ALJ appeared to take Plaintiff's sporadic household activities (washing dishes, making the bed, and buying groceries) as strong evidence that Plaintiff did not have any physical limitations that would affect her ability to work. *See* AR 25. The ALJ apparently failed to account for the "critical differences between activities of daily

living and activities in a full-time job," such as the fact "that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *see also Roddy*, 705 F.3d at 639 ("[A] person's ability to perform daily activities, especially if that can be done only with significant limitations, does not translate to an ability to work full-time."); *Punzio*, 630 F.3d at 712 ("[The plaintiff]'s ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern workplace."). This analysis is particularly important with symptoms that may come and go, such as headaches. *See Lashaun B. v. Saul*, No. 2:19-CV-38, 2019 WL 6112561, at *7 (N.D. Ind. Nov. 18, 2019) ("Thus, even if Plaintiff had headaches significantly less frequently than she reported, and they lasted significantly for shorter periods of time, if they incapacitated her during work hours, that would have a significant impact on her ability to sustain full-time, competitive work.").

Next, Plaintiff argues that the RFC did not adequately address Plaintiff's mental impairments. The ALJ found, among other limitations, that Plaintiff was moderately limited in concentrating, persisting, and maintaining pace. In support of this finding, the ALJ cited a state agency doctor's finding that Plaintiff was moderately limited in the ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms." AR 21 (citing AR 192-93). In the RFC, the ALJ indicated that Plaintiff could "maintain attention and concentration for two-hour segments," but included no other limitations relating to Plaintiff's potential need to take breaks. But the ALJ cited no evidence to suggest that these "psychologically based symptoms" could be consistently controlled for two hours at a time. The ALJ also limited Plaintiff to simple, routine, and repetitive tasks, but the Seventh Circuit Court of

Appeals has warned that this limitation would be insufficient, on its own, to account for limitations in concentration, persistence, and pace. *See O'Connor-Spinner*, 627 F.3d at 620-21 ("In most cases . . . employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace."); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (finding that limitation to unskilled work did not account for limitations in concentration, pace, and mood swings). On remand, the ALJ must build a logical bridge between the evidence and the limitations in the RFC, particularly those that address Plaintiff's vulnerability to interruptions from psychologically based symptoms.

Plaintiff also argues that the ALJ erred in failing to acknowledge or discuss the opinion of her primary care physician, Dr. Sanjay Patel. Dr. Patel treated Plaintiff beginning in 2013, *see* AR 678. In January 2018, Dr. Patel opined that Plaintiff could stand and walk less than two hours during an eight-hour day, could sit with normal breaks for four hours during the day, and would need to change positions throughout the day. *See* AR 1000. Dr. Patel also opined that Plaintiff suffered from moderate to severe depression and would likely miss more than four days a month due to her impairments and treatment. *See* AR 1001. Dr. Patel's opinion was at least partially supported by his treatment notes from the period of insurance, which include observations of anxiety, depression, headaches, panic attacks, and osteoporosis. *See* AR 604, 622-26, 628, 634.

The ALJ must evaluate "every medical opinion [he] receive[s]." 20 C.F.R. § 404.1527(c). If the ALJ declines to give a treating source's opinion controlling weight, he must still determine what weight to give it according to the following factors: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; and whether the

8

physician specializes in the medical conditions at issue, among other factors. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6). Furthermore, "whenever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

In this case, although the ALJ cited to several of Dr. Patel's treatment notes in the decision, he failed to discuss Dr. Patel's January 2018 opinion, which was signed approximately 18 months after the date last insured. Rather, the ALJ stated that "there is no treating medical source statement [supporting further restrictions] to consider and weigh." The Commissioner argues that this error was harmless, in part because the opinion was issued after the date last insured. But the ALJ did not cite this as a reason for failing to consider the opinion, so the Commissioner cannot rely on that argument. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (discussing Chenery doctrine, i.e., an agency's lawyers may not defend its decision on grounds not supplied in the decision).

Moreover, the fact that the opinion was signed after the date last insured was not by itself a "sound reason" for ignoring it. Rather, the ALJ must "always consider the medical opinions in [the] case record" and "evaluate every medical opinion." 20 C.F.R. § 404.1527(b),(c); *see also Parker*, 597 F.3d at 925 (the ALJ must consider "all relevant evidence, including the evidence regarding the plaintiff's condition at present"). An ALJ cannot disregard a medical opinion as untimely unless he makes a properly-supported finding that it has no bearing on the period at issue. *See*, *e.g.*, *Fox v. Colvin*, No. 14 C 4432, 2016 WL 4548999, at *7 (N.D. Ill. Sept. 1, 2016) (remanding where "the ALJ found that there was no indication that the treating physicians were rendering their opinions as to Plaintiff's condition prior to his date last insured and discounted them on those grounds. But . . . while these opinions were rendered after the date last insured,

they were not so remote in time, and related to impairments which were present prior to the date last insured."); *cf. Eichstadt v. Astrue*, 534 F.3d 663, 666 (7th Cir. 2008) ("Although the [medical opinions] tended to suggest that Eichstadt is currently disabled, and perhaps was disabled during the late 1990s, [they] provided no support for the proposition that she was disabled at any time prior to December 31, 1987."). If there was ambiguity as to whether Dr. Patel would have suggested these limitations for his patient during the time she was insured, the ALJ should have followed up with Dr. Patel. *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004) ("[A]lthough a medical opinion on an ultimate issue such as whether the claimant is disabled is not entitled to controlling weight, the ALJ must consider the opinion and should recontact the doctor for clarification if necessary."). Because the ALJ failed to discuss the opinion or find with adequate support that it was not relevant to the period at issue, remand is required.

On remand, the ALJ is directed to consider all of the medical opinions in the record, assess Plaintiff's complaints in the manner prescribed by SSR 16-3p, fully consider each of Plaintiff's alleged impairments, alone and in combination, and provide a logical bridge from the evidence to his conclusions. *O'Connor-Spinner*, 627 F.3d at 618.

**IV.    Conclusion**

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in the Plaintiff's Opening Brief [DE 14] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 28th day of August, 2020.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:   All counsel of record

10